**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

GINA SIMMONS,

                Plaintiff,

v.                                  CIVIL  ACTION  NO.  3:11-0801

JANET NAPOLITANO, SECRETARY,
U.S. DEPARTMENT OF HOMELAND
SECURITY, TRANSPORTATION
SAFETY ADMINISTRATION.

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendant Janet Napolitano, Secretary, U.S. Department of Homeland Security, Transportation Security Administration. [ECF No. 9].[1]  Plaintiff Gina Simmons has responded to the motion and filed a Motion to Amend Complaint [ECF No. 14] in an attempt to cure some defects in the original Complaint.  Upon consideration of the motions, the Court **DENIES** the Motion to Amend and **DENIES, in part,** and **GRANTS, in part,** the Motion to Dismiss.

**I.
FACTS**

In her original Complaint, Plaintiff alleges that in 2002 she was hired by the Transportation Security Administration (TSA), which is administered under the Department of

---

[1]Plaintiff refers to the "Transportation Safety Administration."  The correct title is the Transportation Security Administration.

Homeland Security, to work at Huntington Tri-State Airport.  Plaintiff worked at the airport until July 28, 2007, when she was terminated.

Plaintiff alleges that shortly after she started working for the TSA, she began to experience sexual harassment.  She asserts that the source of most of the harassment was from Carl "Butch" Berlin, who ultimately was terminated for similar conduct.  In 2003, she filed a claim with the Equal Employment Opportunity Commission (EEOC), but the claim was dismissed.

After Mr. Berlin's termination, Plaintiff states her working conditions improved. However, in early 2005, she states she began being sexually harassed by her new supervisor, Paul Lude, whom she also alleges threatened her with reprisals.  In September of 2006, Plaintiff states she interviewed for a screening manager position.  During the interview process, Plaintiff claims she was questioned whether she could do the job as a single mother or because she goes to church. Plaintiff asserts the job was given to an unqualified applicant, Shelly Parsons.

According to Plaintiff, Ms. Parsons immediately started giving Plaintiff write-ups with the intent of having her terminated.  She also scheduled Plaintiff to work on Sundays, despite Plaintiff's request to have the day off so that she could practice her religious beliefs.

Plaintiff states she began seeing a psychologist because of the abuses she experienced at work.  Due to the stress, Plaintiff took leave under the Family and Medical Leave Act (FMLA) in April of 2007.  While still on leave, Plaintiff was terminated.

-2-

As a result of these activities, Plaintiff alleges six causes of action against Defendant, which are: (1) sexual discrimination under Title VII; (2) religious discrimination under Title VII; (3) retaliatory discharge for filing a claim with the EEOC; (4) retaliatory discharge for taking leave under the FMLA; (5) disability discrimination under the American with Disabilities Act (ADA) and Rehabilitation Act; and (6) violations of West Virginia's Wage Payment and Collection Act. Defendant has moved to dismiss each of these counts. Plaintiff responds by agreeing that Defendant is entitled to dismissal of her counts under the FMLA, the ADA, and the West Virginia Wage Payment and Collection Act. Accordingly, the Court **GRANTS** Defendant's motion with respect to those claims. As to the remaining claims, the Court rules as follows.

## II.
## MOTION TO AMEND

Plaintiff has filed a Motion to Amend her Complaint in an attempt to correct some of the deficiencies raised by Defendant in her Motion to Dismiss. Rule 15(a)(2) of the Federal Rules of Civil Procedure permits amendment of a complaint after a responsive pleading has been filed "with the opposing party's written consent or the court's leave" and leave should be freely given "when justice so requires." However, the Fourth Circuit has made it clear that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citation omitted). "Although leave to amend should be freely given when justice so requires, a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason." *Id.* (internal quotation marks, alteration marks, and citation omitted).

The problem with the proposed Amended Complaint in this case is that Plaintiff reasserts her claims under the FMLA, the ADA, and the West Virginia Wage Payment and Collection Act, which she admits must be dismissed.  In addition, as discussed below, Plaintiff cannot state a claim under the Rehabilitation Act irrespective of Amended Complaint.  Thus, Plaintiff's claims in Counts 4, 5, and 6 of the proposed Amended Complaint are completely futile.  Given that half of claims cannot survive even if the Complaint is amended, the Court finds allowing the amendment to reassert those claims is nonsensical and a waste of the time and resources as it inevitably will result in a new motion to dismiss being filed.  The Court sees no point in this result.  If Plaintiff wants to amend her Complaint, she may file a new motion to amend with a proposed Amended Complaint that conforms with this Memorandum Opinion and Order.

### III.
### MOTION TO DISMISS

#### A.
#### Sexual Discrimination Claim

With respect to her sexual discrimination claim, Plaintiff alleges she was first sexually harassed by Mr. Berlin and filed an EEOC complaint regarding the harassment in 2003.  Ultimately, her EEOC complaint was dismissed.  In 2005, she alleges she was sexually harassed by her new supervisor.  In 2006, Plaintiff got a third manager.  She alleges no sexual harassment after September of 2006.  She did not file her second claim with the EEOC until July of 2007.

Defendant asserts in her motion that Plaintiff's claim for sexual discrimination must be dismissed because she failed to exhaust her administrative remedies before filing suit.  Pursuant to 29 C.F.R. § 1614.105(a)(1), a complainant "must initiate contact with a Counselor within 45 days

of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45

days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).[2]  If the matter is not resolved

and the complainant does not agree to a longer counseling period or participation in alternative

dispute resolution:

> the Counselor shall conduct the final interview with
> the aggrieved person within 30 days of the date the
> aggrieved person contacted the agency's EEO office
> to request counseling.  If the matter has not been
> resolved, the aggrieved person shall be informed in
> writing by the Counselor, not later than the thirtieth
> day after contacting the Counselor, of the right to file
> a discrimination complaint.  The notice shall inform
> the complainant of the right to file a discrimination
> complaint within 15 days of receipt of the notice, of
> the appropriate official with whom to file a complaint
> and of the complainant's duty to assure that the
> agency is informed immediately if the complainant
> retains counsel or a representative.

---

[2]Subsection (a)(2) provides for an extension of the time limit under certain circumstances.

> The agency or the Commission shall extend the
> 45–day time limit in paragraph (a)(1) of this section
> when the individual shows that he or she was not
> notified of the time limits and was not otherwise
> aware of them, that he or she did not know and
> reasonably should not have been known that the
> discriminatory matter or personnel action occurred,
> that despite due diligence he or she was prevented by
> circumstances beyond his or her control from
> contacting the counselor within the time limits, or for
> other reasons considered sufficient by the agency or
> the Commission.

29 U.S.C. § 1614.105(a)(2).

29 C.F.R. § 1614.105(d).   Defendant argues that because Plaintiff does not allege sexual discrimination after September of 2006 and she did not contact an EEO Counselor until July 3, 2007, her claim is barred.   However, although it is true that a federal employee must exhaust her administrative remedies before filing suit, the administrative time limits established by the EEOC do not create a jurisdictional bar to filing suit.   "Rather, the failure of a federal employee claiming employment discrimination to exhaust administrative remedies is an 'affirmative defense,' for which the employer has the burden of proof." *Lerner v. Shinseki*, Civil Action No. ELH-10-1109, 2011 WL 2414967, *6 (D. Md. June 10, 2011) (quoting *Young v. Nat'l Ctr. for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1987) (other citations omitted).   If a defendant raises the issue and meets his burden with regard to such a defense, the plaintiff then must establish facts which support equitable tolling, estoppel, or waiver. *Fortune v. Holder*, 767 F. Supp.2d 116, 120 (D.D.C. Mar. 2, 2011) (citations omitted).

        In this case, Plaintiff essentially responds to Defendant's motion by asserting that an inquiry into the facts is necessary to determine whether equitable grounds exist which would allow her to proceed with her sexual discrimination case.   Specifically, Plaintiff states that the sexual harassment continued while her first EEOC complaint was still pending and, therefore, her counsel suggests she likely thought it pointless to file a second complaint at that time.   She also argues that her second EEOC complaint should be deemed to encompass her claims for both sex and religious discrimination.   At this point in the litigation, however, this Court does not even have a copy of the second EEOC complaint to examine.   Therefore, given the posture of the case, the Court finds the

motion with respect to the sexual discrimination claim is premature and, accordingly, **DENIES** the motion with respect to this claim **without prejudice**.

## B.
## Religious Discrimination Claim

Defendant also moves to dismiss Plaintiff's claim of religious discrimination because she fails to allege in her Complaint that she suffered any adverse employment action. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (stating that in order to establish a prima facie case of a failure to provide religious accommodation, a plaintiff must show: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement" (internal quotation marks and citations omitted)).   Plaintiff concedes in her Response that she fails to allege she suffered an adverse employment action following her request for a religious accommodation in her original Complaint.   Therefore, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's religious discrimination claim **without prejudice**.[3]

## C.
## Retaliatory Discharge for Prior EEOC Activity

In her motion, Defendant argues Plaintiff's claim for retaliatory discharge cannot stand because she has failed to allege a causal nexus between her protected activity and the retaliation.   Specifically, Plaintiff asserts in her Complaint that she engaged in protected activity by filing a complaint with the EEOC in 2003.   She then asserts that, "[b]ut for engaging in this

---

[3]Plaintiff asserts the omission was a mere oversight, and she sought to correct the deficiency in her proposed Amended Complaint.   However, as the Court denies the Motion to Amend for the reasons stated above, the Court only considers the claim as it exist in the original Complaint.

protected activity in 2003, . . . [she] would not have been terminated in July of 2007." *Complaint*, at ¶ 51.  Defendant argues that the length of time between protected activity and the alleged adverse action belies any inference that the two events are connected.  Moreover, Defendant asserts that there is no allegation that the decision maker who terminated Plaintiff was aware of her EEOC filing in 2003.

Plaintiff responds by stating the inference of retaliation is justified because her termination actually occurred within one month of her 2007 EEOC activity, as she asserts in her proposed Amended Complaint.  However, as the Court denied Plaintiff's Motion to Amend, the Court only looks to the original Complaint.  From this vantage, the Court finds there is a four-year gap between the protected activity she alleges resulted in her termination.  Clearly, this length of time negates any inference of a causal relationship between the two. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (indicating an over three year gap too long, and stating "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two" (citations omitted)); *see also Lee v. Astrue*, 424 Fed. Appx. 262, 263 n.1 (4th Cir. 2011) (per curiam) (finding "the district court correctly determined that . . . [the plaintiff] failed to establish a prima facie case of retaliation based on the non-selection because the twenty-one-month delay between . . . [the plaintiff's] March 2005 complaint and his non-selection negated any causal connection between the two events").  Thus, the Court **GRANTS without prejudice** Defendant's motion to dismiss Plaintiff's claim of retaliatory discharge.[4]

---

[4]In addition, as asserted by Defendant, Plaintiff must show that the decision maker knew of Plaintiff engaged in protected activity. *See Dowe*, 145 F.3d at 657 (stating "the employer's (continued...)

## D.
## Rehabilitation Act

Defendant argues that Plaintiff's claim under the Rehabilitation Act must be dismissed because her position as a Supervisory Transportation Security Officer is not protected by the Act.  After September 11, 2001, Congress passed the Aviation and Transportation Security Act (ATSA), Pub. L. No. 107-71, 115 Stat. 597 (2001) (codified in various sections of 49 U.S.C.), and the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*  In passing the ATSA, Congress sought "to improve aviation security" by effecting "fundamental change in the way [the United States] approaches the task of ensuring the safety and security of the civil air transportation system." H.R. Rep. No. 107-296, at 1, 53 (2001), 2002 U.S.C.C.A.N. 589, 0, 590 (Conf. Rep.).  As part of the legislation, Congress created the TSA which governs the responsibilities of airport security screening and the qualifications, conditions, and standards of employment for screeners. 49 U.S.C. § 114.   In particular, Congress also enacted ATSA § 111(d), which provides, in part:

> Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the Under Secretary determines to be necessary to carry out the screening functions of the Under Secretary under section 44901 of title 49, United States Code.

49 U.S.C.A. § 44935 note.  Although the Fourth Circuit has not ruled on whether the ATSA precludes security screeners from bringing suit under the Rehabilitation Act, courts which have

---

[4](...continued)
knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish . . . the prima facie case" (citations omitted)).

considered the issue have universally held that it does. *See Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011) (stating "[e]very circuit to address the issue has agreed that the language of the ATSA plainly precludes security screeners from bringing suit under certain of the federal employment statutes incorporated under Title 5 of the United States Code, including the Rehabilitation Act" (citations omitted)).

Plaintiff acknowledges the case law holding the ATSA bars claims under the Rehabilitation Act, but she argues that many of the cases involve accommodations for hiring airport screeners, not those already employed. Therefore, Plaintiff asserts she should not be precluded from bringing an action under the Rehabilitation Act. Plaintiff cites no cases in support of this argument. Moreover, upon review, the Court finds that many of the cases cited by Defendant involve individuals who already were employees. *See, e.g., Field*, 663 F.3d at 506 & 514 (holding the Rehabilitation Act did not apply to the decedent who worked as an airport screener); *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2010) (per curiam) (stating no cause of action under the Rehabilitation Act exists for the plaintiff who alleged she was forced to quit her job as an airport security screener); *Floyd v. U.S. Dep't of Homeland Security*, Civil Action No. RDB-09-0735, 2009 WL 3614830, *1 & 4 (D. Md. Oct. 27, 2009) (holding that the plaintiff, who worked as a Transportation Security Officer for the TSA, could not pursue a disability discrimination claim under the Rehabilitation Act); *Pino v. Hawley*, 480 F. Supp.2d 818, 824-25 (W.D. Pa. 2007) (finding Congress made it clear that the preemptive force of the ATSA extends beyond the hiring process to existing employees). Thus, the Court finds no merit to Plaintiff's argument that the Rehabilitation Act should apply to those already employed as screeners by the TSA.

Likewise, the Court finds no merit to Plaintiff's cursory argument that she is covered by the Rehabilitation Act because it is not expressly preempted by the ATSA.  As  the other courts have stated, "[t]he ATSA provides that the TSA Administrator may establish and enforce employment qualifications for security screeners '[n]otwithstanding any other provision of law.' [T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.'" *Field*, 663 F.3d at 511 (quoting 49 U.S.C. § 44935 note and *Cisneros v. Alpline Ridge Grp.*, 508 U.S. 10, 18 (1993)); *Joren* , 633 F.3d at 1146 ("join[ing] every other circuit to have considered the question and conclud[ing] that the plain language of the ATSA preempts application of the Rehabilitation Act to security screeners" (citations omitted)); *Floyd*, 2009 WL 3614830, at *4 (holding that ATSA "preempts the Rehabilitation Act to the extent that the TSA is recognized as the sole authority for setting the terms and conditions of employment for security screeners" (citations omitted)).

Finally, Plaintiff makes a statement that the Rehabilitation Act should apply to her because she is not seeking a physical accommodation.  Rather, she only needed time off work to recover from her stress.  Again, Plaintiff cites no authority that allows the Rehabilitation Act to apply to a TSA employee in such a situation.  As the ATSA clearly bars security screeners from bringing suit under the Rehabilitation Act, Plaintiff's claim fails.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim under the Rehabilitation Act.

**IV.**
**CONCLUSION**

In sum, for the reasons stated above, the Court **DENIES** Plaintiff's Motion to Amend [ECF No. 14], and **GRANTS** Defendant's Motion to Dismiss Plaintiff's claims under the FMLA, ADA, West Virginia Wage and Payment and Collection Act, and Rehabilitation Act claims, and **DISMISSES** these claims **with prejudice**.  The Court further **GRANTS** Defendant's Motion to Dismiss Plaintiff's claims for religious discrimination and retaliatory discharge, and **DISMISSES** these claims **without prejudice**.  Finally, the Court **DENIES without prejudice** Plaintiff's claim for sexual discrimination.  Thus, as the Complaint currently exists, the only claim remaining is Plaintiff's claim for sexual discrimination.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 12, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-12-